MARK L. AUGER
MELANIE A. AUGER,
          Plaintiffs,

'05 FEB 10 P3:00

CASE NO. 05-C-158

SOFRON B. NEDILSKY
CLERK

V.

JULIE DUQUAINE,
WINN COLLINS,
VINCENT BISKUPIC.
CARRIE SCHNEIDER,
STATE OF WISCONSIN and
WILLIAM GROGAN
          Defendants.

## COMPLAINT

### PREVIOUS LAWSUITS

This is an initial complaint. No previous civil lawsuits have been filed relating to this case. This case does relate to the actions of the ~~plaintiffs~~ *defendants* against the ~~defendants~~ *plaintiffs* relating to State of Wisconsin Circuit Court, Outagamie County, Branch V, Case No. 2 CM 466 and the subsequent appeal, State of Wisconsin, Court of Appeals, District III, Case No. 03-3306-CR

### THE PARTIES

1.     Mark L. Auger, is a citizen of Canada, residing in the state of Wisconsin residing at 3133 Tri Park Ct., Apt 15, Appleton Wisconsin 54914

2.     Melanie A. Auger is a citizen of Canada, presently residing at 2024 Pine Tree Cres., NE, Calgary, Alberta, Canada, T1Y 1L7 and is the daughter of Mark Auger.

3.     Julie DuQuaine is presumed to be a United States citizen, was acting in her capacity as an Assistant District Attorney for the State of Wisconsin in the district of Outagamie Country, where she was practicing law from her office located at 320 Walnut St, Appleton 54911. Her current location and residence was not provided to the plaintiffs.

4. Winn Collins is presumed to be a United States citizen, and was acting in his capacity as an intern and later as an Assistant District Attorney for the State of Wisconsin in the district of Outagamie County, practicing law from his office located at 320 Walnut St, Appleton 54911. His residential address was not provided to the plaintiffs.

5 Vincent Biskupic is presumed to be a United States citizen and while acting in his capacity for the State of Wisconsin as the District Attorney for Outagamie County, and was directly responsible for the actions of all members of his office. He was practicing law from his office located at 320 Walnut St, Appleton 54911. His current location or residential address was not provided to the plaintiffs.

6. Carrie Schneider is presumed to be a United States citizen, and while acting in her capacity for the State of Wisconsin as the Deputy District Attorney and then District Attorney for Outagamie County, and was directly responsible for the actions of all members of her office. She is practicing law from her office located at 320 Walnut St, Appleton 54911. Her residential address was not provided to the plaintiffs.

7. The State of Wisconsin is the sovereign state under which the actions of the District Attorney of Outagamie County and his or her office were authorized to take the actions they did and those who report to them are employed and therefore ultimately responsible for their actions.

8.. The District Attorneys office of Outagamie County as the case developed, maintained a strategy of having the State represented by a different member of this office at each hearing in order to allow individuals to claim they were not aware of certain facts or statements such that others in discovery it may be established that other members of this office bear important responsibility for the actions.

9.. William Grogan is presumed to be a United States citizen and practices criminal law at 103 W. College Ave., Suite 525, Appleton Wisconsin, 54911 and was the plaintiff's legal council shortly after the initial incident until shortly after sentencing. His residential address was not provided to the plaintiffs.

## JURIDICTION AND VENUE

1. Venue is appropriate for filing the case in the Federal Court of the Eastern District of Wisconsin, since this is primarily a federal matter, since this case involves abuse of process, whereby Wisconsin State officials willingly and deliberately misapplied the law contrary to the intent of the statute in question,, in a manner that was contrary to the intent and spirit of the United States Constitution such that the defendants willingly and deliberately trespassed on the plaintiffs constitutionally guaranteed rights to a fair trial, to equal treatment under the law , to act in his own self defense and to be free from oppression.

2. Venue is also appropriate since the plaintiffs in this action are foreign nationals.

3. Since the defendants include the State of Wisconsin and personnel acting on its behalf directly within the legal system of this state, this case would not be appropriately heard in the courts of the State of Wisconsin, the alternate jurisdiction in this case, representing a clear conflict of interest.

4. The plaintiffs further requests this case be referred to another Federal District Court outside of the State of Wisconsin to eliminate any further conflicts of interest that most probably would exist with the jury and others in their relationship to the State or the legal community if this case is heard within the district. The plaintiff has no preference of an alternative district beyond this.

## OVERVIEW

1. This case is about providing compensation to the plaintiffs for damages inflicted upon them, as a result of the actions taken against Mark Auger, one of the plaintiffs. The actions committed by Attorney Julie DuQuaine, Attorney Winn Collins, and other representatives of the District Attorney's office, in the District of Outagamie County acting on behalf of and under the supervision of District Attorney Vincent Biskupic and his successor District Attorney Carrie Schneider, under the authority of the State of Wisconsin. hereafter referred to as the prosecuting attorneys, whereby these attorneys willfully and dishonestly enforced the law in a manner that was contrary to the spirit and intent of the statute they were enforcing on Domestic Abuse,

contrary to the spirit and intent of the United States Constitution and in complete disregard for the protections guaranteed Mark Auger by the Constitution of the United States of America.

2.  The actions of the prosecution at a point were clearly not motivated by the administration of justice, but rather to protect their reputations and to prevent a malicious prosecution action. Therefore the prosecution of Mark Auger constituted an abuse of process.

3.  This case also names Attorney William Grogan, who acted as defense council for the plaintiff. His performance, as defense council in this case shows that he acted either with extreme negligence in the performance of his duties, but given his experience and background, instead almost certainly conspired with the prosecuting attorneys to allow them to obtain a false conviction, against the interests of his client. If Attorney Grogan had acted properly in the interests of his client, the plaintiff, the prosecution would not have succeeded in their dishonest criminalization of Auger and therefore must share in the liability for the damages done.

## COMPLAINT FOR THE PROSECUTING ATTORNEYS

4.  The prosecuting attorneys charged Auger with disorderly conduct, while enforcing Wisconsin statute relating to Domestic Abuse., obtained a conviction and then subsequently fought off Auger's attempts to reverse the unjust conviction and his subsequent *pro se* appeal.

5.  The prosecutions initial action was prompted by jumping to a conclusion after an inadequate investigation, failing to properly investigate the situation before making their initial charging decisions. They were clearly highly negligent in reaching this decision. However very early in the proceedings, rather than admit their error they made a decision to continue their prosecution by bringing the case to trial in a dishonest and hypocritical manner, on the basis that they would find some guilt in any case. When the trial was over it was clear to all the prosecution had succeeded in obtaining an unjust conviction. These actions constituted an abuse of process since their actions we not based on the notion of serving justice, but instead they conducted a prosecution designed solely to obtain and maintain a conviction in spite of justice to protect their own interests and reputation. The clear motive for their actions was to suppress Auger's resistance and to avoid a lawsuit for malicious prosecution and in the process severely aggravated the damages to Auger and his family. The prosecution succeeded in this regard since the

conviction was maintained and a token fine of $50 plus costs levied, insuring that the required element that Auger be cleared of the charge to pursue an action on the basis of a malicious prosecution

6. The prosecuting attorneys continued their prosecution of the case with the knowledge that the facts of the case clearly established that Auger was the victim in a domestic abuse incident and did not commit an act of domestic abuse as defined by the statute they were enforcing. In fact they did the exact opposite of the stated intent of the statute.

7. The prosecuting attorneys deliberately misrepresented Auger's actions to the jury in a calculated fashion and continued to prosecute to maintain the conviction, with the knowledge that Mark Auger had been denied a fair trial in large part because of these actions.

8. The prosecuting attorneys prosecuted Auger acting on behalf of his wife, hypocritically maintaining that she was the victim, despite her denial of this, her admission that she had in fact committed domestic abuse and her husband had not, and clear evidence, including photographs of Mark Auger's injuries that she was in fact telling the truth. By acting in this manner, the prosecution was intentionally trespassing on Auger's Constitutional Right to be treated equally under the law.

9. The prosecuting attorneys based their case almost exclusively on three principle actions- that Auger held his wife by the wrists, that Auger lightly taped his wife on the shoulder and that Auger tapped his wife on the head. They did so with the knowledge that Auger took these actions after he had received important threats, verbal abuse and significant injuries such that Auger's actions would normally be attributed to lawful acts of self-defense with a high degree of certainty. They nevertheless prosecuted Auger for these actions with the declared strategy of denying Auger a self-defense jury instruction, thereby denying Auger his constitutionally guaranteed right of a fair trial as is guaranteed by the United States Constitution.

10. The prosecuting attorneys used the law to obtain a decision against a motion to dismiss, based on the principle that the evidence must be solely based on evidence presented by the state viewed most favorably to their case, with the knowledge that their case was defective in the presentation of the evidence.

11. Mark Auger appealed this case. The prosecution crafted a document that in effect reaffirms and acknowledges the above complaints, by not disputing truth of the arguments raised by Mark Auger in appeal but rather by arguing that Mark Auger's appeal should not be granted because of various technical points. - objections, contemporaneous objections, failing to raise the matter at the appropriate time etc. The person responsible for all these failings, with one exception, was not Auger, but rather the defense council at the time, Attorney Grogan. This document was a tacit admission of Auger's complaints above, and in effect argues that Auger was responsible for his own false conviction because he failed to adequately defend himself.

12. The prosecuting attorneys, by acting in the manner described above was using the law and the financial resources of the State to protect their own interests and reputation rather than serving justice. Their actions were against everything the United States and its constitution is supposed to stand for. This was oppression and an abuse of process.

13. Aside from the unjust prosecution of Auger, the prosecuting attorneys were fully aware that this prosecution, due to Auger's unique circumstances had the potential to cause consequences that would be tremendously damaging to the Auger family, placing their living standard, earnings potential and future receipt of government benefits in jeopardy. In addition the loss of Auger's current employment, the potential for a period of unemployment, and the expenses of relocation to Canada was at risk. Because of this situation, the prosecution redoubled their efforts to maintain the false conviction in order to avoid the potential for further litigation rather than try to find a way to that the Auger family avoid the unreasonably severe consequences as a result of their actions.

14. The following is a brief explanation of the special circumstances referred to above. The Auger family were winners of the 2002 US Diversity Visa Lottery. Under the rules of this program, the winners had until Sept 30th, 2002 to have their application for immigration completely processed or the visa is not granted, with no possibility of appeal or extension. The laws surrounding the granting of this visa state, that a visa cannot be granted in the case of an outstanding criminal case. The other members of the family were dependant on Auger's visa being approved to obtain their visa since he was the "breadwinner" of the family. In addition the visa is granted on the basis of an interview in which the existence of a criminal record is generally considered as a basis for refusal.

15. No attempt has been made to estimate the overall financial impact of the loss of these visas would have had to the Auger family, but Mark Auger believes this figure would easily exceed one *million dollars and potentially up to several million dollars* depending on how this is considered. When the actions of the prosecution are taken into this context, the truly oppressive and immoral character of the prosecution becomes apparent.

16. This damaging situation was largely averted, with the exception of Mark Auger's daughter Melanie, addressed later in this complaint. These damages were largely averted due to Auger applying his best efforts to avoid this, the active help of the people in the INS office of Milwaukee to expedite the matter, and to provide special help to down play Auger's breadwinner status, a great deal of luck and (perhaps reluctantly) the Hon. Michael Gage who scheduled a sentencing hearing on the last possible day in which this disaster could be averted, September 27th,2002 and fining Auger the nominal sum of $50 plus costs to allow Auger to avert this disaster.

## COMPLAINT FOR ATTORNEY GROGAN

17. The prosecution would not have succeeded in their efforts if the defense council, Attorney William Grogan, acting on Auger's behalf had not acted in a highly ineffective manner. On the surface the actions of Attorney Grogan would appear to be due to a very high degree of incompetence and negligence. However as Mark Auger has come to understand the law and given Attorney Grogan's prior experience, it is highly improbable that this was the case, but rather that Attorney Grogan was working against Mark Auger's interests in a deliberate fashion either in his own self interest to maximize his fees or in co-operation with the prosecuting attorneys or both. Specific examples are as follows:-

18. Attorney Grogan failed to adequately prepare for the case, despite Auger's repeated request to do so.

19. Attorney Grogan failed to properly advise his client about the charge he faced, informing him that he was charged with disorderly conduct the morning of his trial.

20. Attorney Grogan, failed to request a self-defense instruction despite the obvious importance of self-defense in this case.

21. Attorney Grogan failed to make a contemporaneous objection, when the Judge in the case made a statement that he would not provide a self-defense instruction. During the trial, Mark Auger asked Attorney Grogan to object to this statement and to ask for the self defense instruction. He replied to Auger that he would not since he should not risk offending the trial court. If such an objection had been raised and the instruction not provided a mistrial would have to be declared.

22. Attorney Grogan failed to make a contemporaneous objection to the misrepresentations of the prosecution. During the opening and closing statements of the trial Auger repeatedly asked Attorney Grogan to object to some of the statements made by the prosecuting attorney. Attorney Grogan replied that he was not allowed to object during this phase of the trial.

23. Attorney Grogan failed to advise the jury that Mark Auger's wife was being compelled to testify under threat of contempt of court, and that she had invoked her 5th amendment right and had been granted immunity by the state, despite being advised by the trial

24. Attorney Grogan failed to appropriately cross examine the State's witness Mark Auger's wife Farzaneh, failing to question her about key points of evidence.

25. Attorney Grogan failed to appropriately argue the concepts of intent and self-defense.

26. Attorney Grogan failed to make appropriate arrangements with the trial court to allow his character witnesses to testify.

27. On the surface the actions of Attorney Grogan appear to be actions of gross negligence and incompetence. When one comes to a certain understanding of the law however, it becomes clear that Attorney Grogan's actions were beyond this and appear to be undertaken in an effort to allow the prosecution to obtain their conviction, and to ensure that the conviction would not be overturned or a mistrial declared against the interests of his client.

DAMAGES

28. As a direct result of the actions of the prosecuting attorneys and Attorney Grogan's actions Mark Auger and his family, particularly his daughter Melanie suffered the following damages for which they seek compensation.

29. As outlined previously in this complaint the Auger family managed to largely avoid the severe threats placed on them by the actions of the prosecution. However this situation caused great anxiety and suffering among the Auger family, resulted in considerable expenditures for processing the green cards and in Mark Auger's defense and had important lasting consequences.

30. The plaintiffs consider that Melanie Auger of Calgary, Alberta, Canada, daughter of Mark Auger lost her opportunity to obtain permanent residence status in the United States due to the circumstances imposed on the Auger family by the actions of the prosecuting attorneys. At the time she was attending college in Canada, but the immigration process required that she stay in the United States or abandon her application. In this situation Melanie was forced by the circumstances of her father's situation to make a choice between waiting in the United States to process her application for permanent residence in the United States if her father's legal situation cleared up or returning to college. If she decided to wait in the United States she would loose her year in college and with the wait involved, possibly not complete her studies. At the point in time where she was forced to make her decision her decision, the possibility of obtaining the green card was considered to be very remote by the family. She therefore decided to abandon her application and return to college. Since the rest of Auger's family did succeed in obtaining their permanent resident cards, Melanie will eventually be able to apply for this on the basis of her relationship; however the current waiting time for admission to the United States on this basis is in excess of ten years, with an estimated overall wait of 15 years. Auger considers the impact of this loss to be enormous, where an average person could expect to have 20 to 30% more disposable income over the course of their lifetime. In addition much can happen in this time period and she may never obtain permanent residence status and eventually citizenship, with the right for herself and her descendants to live in the United States.

31. The other lasting consequence of this action is that Auger has an unmerited criminal record, which has significant implications in his employment as an international worker.

WHEREFORE, the plaintiffs Mark L. Auger and Melanie A. Auger ask for a judgment as follows:

32. For Mark Auger and against the prosecuting attorneys, the State of Wisconsin and William Grogan, in a proportion determined by the court, for all costs incurred and compensation for time expended by Mark Auger in his own defense against the actions of the State, during his trial, pre & post-conviction proceeding and appeal.

33. For Mark Auger and against the prosecuting attorneys, the State of Wisconsin and William Grogan, in a proportion determined by the court, for all additional costs incurred by Auger for himself and on behalf of and his family in obtaining permanent resident status, and the costs incurred by Mark Auger in the futile attempt to obtain a permanent resident (green card) for his daughter Melanie

34. For Melanie Auger and against the prosecuting attorneys, the State of Wisconsin and William Grogan, in a proportion determined by the court, for compensation for the loss of permanent resident status in the United States and all that represents.

35. For Mark Auger and against the prosecuting attorneys, the State of Wisconsin and William Grogan, in a proportion determined by the court reimbursement for the penalties imposed by the trial court and compensation for his resulting criminal record and all that represents

36. For Mark Auger and against the prosecuting attorneys, the State of Wisconsin and William Grogan, in a proportion determined by the court, reimbursement for the costs of this action.

37. For Mark Auger and against the prosecuting attorneys, the State of Wisconsin and William Grogan, in a proportion determined by the court for punitive damages and/or other such remedies as may be determined to be appropriate by the court:

On behalf of the plaintiffs, I declare under penalty of perjury that the forgoing is true and correct.

Complaint signed this 9th day of February, 2005

*[signature]*

MARK L. AUGER
Plaintiff- *pro se*

3133 Tri Park Ct. #15
Appleton, WI 54914
(920) 268-4116